IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ATLANTIC CITY ELECTRIC            :
COMPANY, INC.,                    :   CIVIL ACTION
                                  :   NO. 09-3573
        Plaintiff,                :
                                  :
        v.                        :
                                  :
THE ESTATE OF JERRY RICCARDO      :
et al.                            :
                                  :
        Defendants.               :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            FEBRUARY 4, 2010

## I. Introduction

Plaintiff, Atlantic City Electric Company ("ACE"), brings this action against Defendants Denise Riccardo and the Estate of Jerry Riccardo ("Riccardos"), seeking to set aside an arbitration award that was allegedly procured by fraud.[1] The Riccardos move to dismiss this action, arguing that ACE's claims are time barred. For the following reasons, the Riccardos' motion to dismiss is granted in part and denied in part. The motion is granted as to Counts I, II, and III and denied as to Count IV of the Amended Complaint.

---

[1] ACE is incorporated in New Jersey with its principal place of business in New Jersey. Jerry Riccardo lived in Pennsylvania and his business was incorporated in Pennsylvania when he was alive. Denise Riccardo, the widow of Jerry Riccardo, is a Pennsylvania citizen, residing in Pennsylvania.

## II. Background

In 2005, the Riccardos initiated suit in the United States District Court for the District of New Jersey (the "New Jersey Federal Court") against ACE seeking money damages for an accident in which Jerry Ricardo received an electric shock resulting in personal injuries. The parties engaged in extensive discovery, especially regarding Mr. Riccardo's health. By stipulation of the parties, the case was dismissed by the New Jersey Federal Court with prejudice and referred to binding arbitration. On August 26, 27, and 28, 2008, the arbitration hearing was held in Philadelphia, Pennsylvania. The arbitrator found for the Riccardos, and on October 13, 2008, ACE paid the Riccardos $750,000.

On October 21, 2008, counsel for ACE learned that Mr. Riccardo was suffering from terminal cancer. Mr. Riccardo died on October 25, 2008, less than two months after the arbitration hearing. ACE believes that Jerry Riccardo knew he was suffering from terminal brain cancer during the arbitration hearing but failed to disclose it. On January 29, 2009, ACE moved in the New Jersey Federal Court to vacate the arbitration award based on allegations of fraud that the Defendants had not disclosed Mr. Riccardo's illness. On May 1, 2009, the Honorable Joseph Irenas denied ACE's motion and held that the New Jersey Federal Court lacked jurisdiction to vacate the award because the parties had

dismissed the case with prejudice.  See Jerry Riccardo et. al. v. Pepco Holdings Inc. & Atlantic City Electric Co., No. 05-3200, Order Dismissing Motion to Vacate Arbitration Award (D.N.J. May 1, 2009) (Irenas, J.); see also id., Transcript of Hearing on Motion to Vacate Arbitration award, at 29-31.

On April 29, 2009, ACE filed the instant action in the New Jersey Federal Court.  Judge Irenas transferred the case, pursuant to 28 U.S.C. § 1404(a), to this Court, the ("Pennsylvania Federal Court"), where it is now pending.

In Count I of the Amended Complaint, ACE maintains that the New Jersey Arbitration Act, N.J.S.A. 2A:23B-3, governs the arbitration process of the underlying action and seeks damages for alleged fraud.  Count II alternatively maintains that the arbitration process is governed by common law arbitration.  Count III alleges a violation of discovery rules, claiming that the Riccardos failed to disclose Mr. Riccardo's true medical condition.  ACE seeks, under Fed. R. Civ. P. 60(b) to vacate the arbitration award.  Count IV seeks damages for the Riccardos' alleged fraud and/or misrepresentation at the August 2008 arbitration hearing.  ACE claims fraud and/or misrepresentation, based upon a certification from a medical doctor that, in his opinion, the decedent at the arbitration hearing looked older likely due to the effects of systemic cancer and the effects of chemotherapy or radiation.  Because ACE believes Mr. Riccardo's

cancer was probably present long before the arbitration and Mr. Riccardo knew of the cancer but failed to disclose it, ACE requests reimbursement of the arbitration award.

On September 2, 2009, ACE filed an Amended Complaint to include a claim for common law fraud and misrepresentation (Amended Complaint, doc. no. 6 at Count IV). On September 14, 2009, the Riccardos filed a motion to dismiss claiming that this action should be dismissed in total as asserting claims beyond the statute of limitations (doc. no. 8).

### III. Standard of Review

In deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 216 (3d Cir. 2007) (quotation omitted). The Court need not, however, "credit either bald assertions or legal conclusions in a complaint when deciding a motion to dismiss." Id. (quotation omitted). Viewing the complaint in this manner, the Court must dismiss the complaint if it fails to state a claim upon which relief can be granted.

The statute of limitations may be raised by a Rule 12(b)(6) motion. When a statute of limitations begins to run is ordinarily a question of fact. When the facts are established,

the inquiry becomes a question of law. Dole v. Local 427, 894 F.2d 607, 609 (3d Cir. 1990).

**IV. Analysis**

    **A. The Riccardos' Motion to Dismiss**

The Riccardos move to dismiss this action, arguing that, upon the facts of record, ACE's claims are time barred. The Riccardos allege that the parties stipulated that JAMS Streamlined Arbitration Rules and Procedures would apply to the arbitration. JAMS, the arbitration organization used in this case, has adopted rules which provide that "[p]roceedings to enforce, confirm, modify or vacate an Award will be controlled by and conducted in conformity with the Federal Arbitration Act, 9 U.S.C. Sec 1 et. seq. [FAA] or applicable state law." (See Defs.' Ex. C, JAMS Streamlined Arbitration Rules and Procedures (revised Mar. 26, 2007) at 18.) The Riccardos argue that ACE's counsel had notice of Mr. Riccardo's cancer on October 21, 2008,[2] but did not move to vacate the arbitration until January 29, 2009, one hundred (100) days after October 21, 2008.

---

    [2] ACE argues that on October 31, 2008, counsel for ACE forwarded a letter to the arbitrator advising of a possible motion to vacate the arbitration award. Therefore, ACE contends that October 31, 2008, is the start of the statute of limitations. ACE admits that ten days earlier, on October 21, 2008, counsel for ACE learned that Mr. Riccardo was sick and forwarded a letter to the Riccardos' counsel inquiring as to Mr. Riccardo's illness. Because ACE admits it was on notice of potential fraud, or at least suspicious of potential fraud, on October 21, 2008, the Court will use that date from which the statute of limitations begins to run.

Under the FAA, 9 U.S.C. § 12, a notice of a motion to vacate must be served within three months (90 days) after the award is delivered. The arbitration award was delivered in this case on September 3, 2008, but ACE only filed a motion to vacate on January 29, 2009, more than 90 days after the entry of the arbitration award.[3]

Under Pennsylvania law, 42 Pa. C.S.A. § 7314(b), the limitation for a proceeding to vacate an award is "30 days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud, or misconduct or other improper means, it shall be made within 30 days after such grounds are known or should have been known to the applicant." 42 Pa. C.S.A. § 7314(b).[4] The Riccardos argue that the instant civil action was filed on April 29, 2009, more than 30 days after ACE's counsel acknowledged ACE was aware of Mr. Riccardo's cancer.

---

[3] Parties both agree that the FAA does not apply in this case. See Pl.'s Br., doc. no. 10 at 14-15; Defs.' Br., doc. no. 15 at unnumbered 1-2. Therefore, the Court will decide between Pennsylvania and New Jersey as to the applicable state law here.

[4] Whether Pennsylvania's statutory or common-law arbitration applies is of no importance. Pennsylvania Superior Court panels have repeatedly stated that any challenge to a Pennsylvania common-law arbitration award, under § 7324(b), must be made to the court of common pleas, by filing a petition to vacate or modify the award "within 30 days of the date of the award." U.S. Claims Inc. v. Dougherty, 914 A.2d 874, 877 (Pa. Super. 2006); Sage v. Greenspan, 765 A.2d 1139, 1142 (Pa. Super. 2000); Beriker v. Permagrain Products Inc., 500 A.2d 178, 179 (Pa. Super. 1985).

Under New Jersey law, N.J.S.A. 2A:23B-23, a summary action must be filed within 120 days after the aggrieved (Plaintiff in this case) receives notice of the award or 120 days after fraud or corruption is known. See N.J.S.A. 2A:23B-23(b). The Riccardos argue that the instant civil action was filed more than 120 days after October 21, 2008.[5]

**B. ACE's Response**

ACE responds that New Jersey law applies to this case. ACE points to New Jersey as the domicil of the corporate Plaintiff and to the place of the accident in the underlying case. ACE argues that when it learned of the Riccardos' possible fraud, it moved to vacate the arbitration award on January 29, 2009, within New Jersey's 120 day statute of limitations period.

ACE argues that even if Pennsylvania law applies, the Court should extend the statutory period because once it learned there was potential fraud, it took immediate action. (Pl.'s Br., doc. no. 10 at 13.) ACE's counsel took a number of steps to resolve the matter, before filing the motion to vacate including:

---

[5] Defendants argue that the Court should use April 29, 2009, the date when the instant action was filed in the New Jersey Federal Court rather than January 29, 2009, the date that Plaintiff filed the motion to vacate because the latter was not a summary action. If the Court decided to apply New Jersey law and use the January 29, 2009 filing date, ACE's action would not be time barred. Only this combination would result in a timely action.

(1) contacting defense counsel on October 21, 2008; (2) contacting the arbitrator on October 31, 2008; (3) holding a conference with the arbitrator on November 6, 2008, where the arbitrator informed the parties that she no longer had jurisdiction; and (4) sending a letter to the New Jersey Federal Court on November 17, 2008. The letter resulted in a telephone conference with the Honorable Ann Marie Donio (United States Magistrate Judge in the New Jersey Federal Court) that was unsuccessful. Only then, on January 29, 2009, ACE filed the motion to vacate the arbitration award. Thus, ACE argues that the Court should credit these actions to extend the statutory period.

Finally, ACE argues that regardless of whether New Jersey or Pennsylvania law applies, ACE's common law fraud and misrepresentation claims survive the Riccardos' motion to dismiss because the present motion was filed within the applicable statute of limitations.[6]

**C. Choice-of-law Analysis**

As a preliminary matter, the Court must determine whether Pennsylvania or New Jersey law governs the application of

---

[6] Pennsylvania has a two-year statute of limitations in which to file a claim for fraud or misrepresentation. See 42 Pa. C.S. § 5524(7). Under New Jersey law, the statute of limitations for fraud is six years. See N.J.S.A. § 2A:14-1. Thus, Plaintiff argues that the misrepresentation/fraud claims survive Defendants' motion to dismiss. Defendants do not respond to this argument.

the statute of limitations in this case.

The choice-of-law provisions in the JAMS rules do not resolve the issue of whether Pennsylvania or New Jersey's statute of limitations applies. The Court, therefore, must undertake the relevant choice-of-law analysis.

Given that this case was transferred to this Court under § 1404(a), it is the choice-of-law rules of the state of the transferor court, in this case New Jersey, which apply. See Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) (for defendant-initiated § 1404(a) transfers); see also Lafferty v. St. Riel, 495 F.3d 72, 77-78 (3d Cir. 2007). New Jersey applies the "most significant relationship" test as found in the Restatement (Second) of Conflict of Laws (1971) (the "Restatement"). P.V. v. Camp Jaycee, 962 A.2d 453 (N.J. 2008).[7]

Under New Jersey's most significant relationship test, the Court must undertake a two step analysis. The first step is

---

[7] Until recently, the conflict of laws analysis that was applied in New Jersey to tort claims was the "governmental interest" test. See Warriner v. Stanton, 475 F.3d 497, 500 (3d Cir. 2007). Under that test, a court would first determine if an actual conflict existed between the states involved; if so, the court would next "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." Id. at 501.

In Camp Jaycee, the Supreme Court of New Jersey debuted a new paradigm for resolving conflict of laws disputes for tort claims. Under the new approach, the court abandoned the "governmental interest" test and adopted, as the New Jersey rule, the "most significant relationship" test. Camp Jaycee, 962 A.2d at 459.

to examine the substance of the potentially applicable laws to determine whether an actual conflict exists. Id. at 460 (citing Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)). "A conflict arises when there exists a 'distinction' between the substance of the potentially applicable laws." Arcand v. Brother Intern Corp., ___ F. Supp. 2d ___, 2009 WL 4261085, at *5 (D.N.J. Nov. 30, 2009) (citing Camp Jaycee, 962 A.2d 453); see also Lebegern, 471 F.3d at 430 ("'[T]he initial step in choice-of-law questions is a determination of whether there is a distinction *in the laws* of particular jurisdictions'")(emphasis in original)(internal citation omitted). If there is no "distinction between the potentially applicable laws, there is no choice-of-law issue to be resolved and the court will apply the law of the forum state." Clark v. Prudential Ins. Co. of Am., No. 08-6197, 2009 WL 2959801, at *5 (D.N.J. Sept. 15, 2009) (citing Camp Jaycee, 962 A.2d 453).

Here, the issue is whether there is a distinction between New Jersey and Pennsylvania's statute of limitations for challenging arbitration awards. Under the New Jersey Act, an aggrieved party has 120 days to move to vacate an award on the grounds it was procured by corruption or fraud. Conversely, aggrieved parties in Pennsylvania have only 30 days to move to vacate. Since application of Pennsylvania law would bar ACE's claim, while New Jersey law would not, the Court concludes that

this distinction gives rise to an actual conflict.

The second step of the most significant relationship test is to apply the relevant factors enumerated in the section of the Restatement that corresponds to the cause of action.[8] In this case, the Court turns to the Restatement § 148 which addresses fraud and misrepresentation. This section states in the pertinent part:

> (1) When the plaintiff [ACE] has suffered pecuniary harm on account of his reliance on the defendant's [the Riccardos] false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.
>
> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties

---

[8] For example, in Camp Jaycee, where the plaintiff's claim was for personal injury, the relevant section of the Restatement was § 146, which recognizes that the state in which a personal injury occurs is likely to have the predominant relationship to the parties and issues in the litigation. 962 A.2d at 460. It is from the vantage point of the relevant section of the Restatement that "we turn to the remaining contacts set forth in sections 145 and the cornerstone principles of section 6" of the Restatement to determine whether another state has a "more significant relationship . . . [with] the occurrence and the parties" than the state dictated by the relevant section of the Restatement. Id. at 461.

-11-

>    (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>    (b) the place where the plaintiff received the representations,
>    (c) the place where the defendant made the representations,
>    (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>    (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>    (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement § 148.

Under § 148, the Court must first determine in which of the jurisdictions the misrepresentations were made and where the reliance occurred. It is uncontested that the Riccardos' alleged misrepresentations were made in Pennsylvania during the arbitration hearing. However, as Comment f to Section 148 explains, "reliance may take a variety of forms[.]" Here it is unclear if ACE relied on the misrepresentations in Pennsylvania during the arbitration or upon remitting payment to the Riccardos in New Jersey, after the arbitration award was delivered. Id. § 148, Comment f.

If, as the Riccardos argue, both misrepresentation and reliance occurred in Pennsylvania, under Restatement § 148(1), Pennsylvania law would apply. On the other hand, if only the alleged misrepresentations occurred in Pennsylvania, but reliance on these misrepresentations occurred in New Jersey, under

Restatement § 148(2), the Court must apply the relevant factors under § 148(2) to determine which jurisdiction's law to apply. Assuming ACE relied on the Riccardos' representations in New Jersey, the Court must then apply the relevant factors under § 148(2).

Comment j of the Restatement explains, in part, how the factors of § 148(2) are to be analyzed. "If two of the above contacts, other than defendant's domicile, state of incorporation or place of business, are located wholly in a single state, then that state's law will usually govern." Id. at § 148 Comment j. Here, it is undisputed that the misrepresentations made by the Riccardos occurred in Pennsylvania (factor(c)) and were received by ACE in Pennsylvania (factor (b)). Therefore, application of the factors in § 148(2) point clearly to the propriety of applying Pennsylvania law.[9]

Finally, the Supreme Court of New Jersey advises that

---

[9] The arbitration at issue in this case occurred in Pennsylvania. Thus, Pennsylvania is the place where the Defendants made the alleged misrepresentations and where ACE received the alleged misrepresentations. Mr. Riccardo's diagnoses and treatments, which form the basis of the alleged fraud claim, also occurred in Pennsylvania. The sole factor to the contrary is that Mr. Riccardo's accident occurred in New Jersey.

ACE is a New Jersey corporation; however, Mrs. Riccardo is a Pennsylvania resident, as was Mr. Riccardo before his death. Thus, each jurisdiction has equal ties to the claim, and consideration of "the domicil, residence, nationality, place of incorporation and place of business of the parties," weighs in equal favor to both states. See Id. § 148(2)(d).

once the §148 factors have been applied and the analysis points to a particular jurisdiction, courts must consider if "the section 6 considerations gin up or diminish the values ascribed to the contacts relative to the issue presented[.]" Camp Jaycee, 962 A.2d at 463.

Section 6 of the Restatement lists the following considerations: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. Id. § 6(2).

The application of § 6 factors demands a highly qualitative approach. In essence, § 6 creates a prism though which to validate or adjust the conclusion reached by the court under § 148. In other words, a careful review of the relevant policies identified in § 6 insures that the conclusion reached by the court under § 148 is not at odds with the Restatement's general principles.

Here, the conclusion reached under § 148(2), that Pennsylvania law applies to the issue of the statute of

limitations in this case, is congruent with the policies identified under § 6 of the Restatement. Specifically, national arbitration policy (considerations "a" & "e" of § 6), as well as the policies of Pennsylvania (consideration "b" of § 6) and New Jersey (consideration "c" of § 6) all promote the objectives of prompt enforceability and finality of arbitration awards. See Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 81, 91 (2000); Serv. Employees Int'l Union v. Office Ctr. Servs., Inc., 670 F.2d 404, 412 (3d Cir. 1982); Barcon Assocs. v. Tri-County Asphalt Corp., 430 A.2d 214, 219 (N.J. 1981). Applying Pennsylvania's 30 day statute of limitations for moving to vacate an arbitration award comports with national and Pennsylvania policy without denigrating New Jersey policy.[10]

Therefore, under Restatement § 148 and § 6, Pennsylvania law is the applicable law in this case.

**D. Counts I & II**

Applying Pennsylvania's 30 day statute of limitations to Counts I and II of the Amended Complaint, the Court finds they are time barred. The instant action was filed on April 29, 2009, more than 30 days after ACE first learned of the Riccardos' possible fraud on October 21, 2008. Even using the date ACE

---

[10] Although, as discussed supra, the period of time within which to challenge arbitration awards in New Jersey is slightly longer than in Pennsylvania, 120 days as opposed to 30 days, this distinction does not undermine the policies of prompt enforceability and finality of arbitration awards of both states.

mistakenly moved to vacate the arbitration award in the New Jersey Federal Court on January 29, 2009, the claims are still time barred.

ACE's request that the Court extend the statute of limitations, based on ACE's actions upon learning of Mr. Riccardo's cancer, is without merit.  ACE has not adequately justified why it failed to move to vacate the arbitration award within the statute of limitations or identified other circumstances that call for the Court to extend the statutory period. See Bass v. Commonwealth of Pennsylvania, 401 A.2d 1133, 1137 (Pa. 1979) ("the time for taking an appeal cannot be extended as a matter of grace.  The extension of a statutory period providing for the period of time during which an appeal may be filed is only justified where there is fraud or some other breakdown in the court's operation.") (citations omitted).  Here, there is no evidence of a breakdown in the court's operation, and any alleged fraud was evident to ACE's counsel in time to challenge the award.

Therefore, Counts I and II, which relate to the arbitration and are subject to the thirty day statute of limitations, shall be dismissed.

**E. Count III**

ACE seeks, under Fed. R. Civ. P. 60(b), to vacate the arbitration award for an alleged violation of Fed. R. Civ. P. 26.

-16-

ACE claims that the Riccardos failed to continue to disclose the nature and condition of Mr. Riccardo's health up to the time of arbitration. ACE believes the Riccardos intentionally withheld such information to mislead the arbitrator as to Mr. Riccardo's true condition at the time of the arbitration hearing.

The Riccardos respond that Rule 60(b) does not authorize a party to obtain judicial relief from an award of an arbitration panel. The Riccardos claim that Rule 60, and generally the Federal Rules of Civil Procedure, are not designed to apply to proceedings other than those in the United State District Courts and cannot nullify the order of a private arbitrator. (Pl.'s Br. at unnumbered 4.) Consequently, the Riccardos argue that this claim should be dismissed for failure to state a claim upon which relief can be granted.

Rule 60(b)(3), the most applicable provision in this case, provides for relief from a final judgment "where there has been 'fraud . . ., misrepresentation, or other misconduct of an adverse party.' To prevail, the movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case." Stridiron v. Stridiron, 698 F.2d 204, 206-07 (3d Cir. 1983).[11] Under Rule 60(b)(3), a motion seeking

---

[11] The Stridiron case is distinguishable in that it involved a final order and not the entry of an arbitration award. In Stridiron, a wife was entitled to the vacation of her divorce

relief must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

ACE has not cited, and the Court has not located, any Third Circuit cases where Rule 60(b) was successfully used to vacate an arbitration award. However, the Court of Appeals for the District of Columbia has held, "we think that neither Rule 60(b) nor any judicially constructed parallel thereto was meant to be applied to final arbitration awards. . . ." Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co., 442 F.2d 1234, 1239 (D.C. Cir. 1971); see also In Cook Chocolate Co. v. Salomon Inc., 748 F.Supp. 122, 125 (S.D.N.Y. 1990) ("Because a motion to vacate an award falls within the scope of 'matters of procedure,' [of the FAA] and because 9 U.S.C. § 9 explicitly provides for this relief, Rule 60(b) is unavailable . . . in contesting the arbitrators' decision."). The Court agrees that Rule 60 is not an appropriate vehicle

---

decree and was granted a new trial when she presented a marriage certificate as newly discovered evidence that her husband was previously married and, therefore, that their marriage should be annulled. 698 F.2d at 207. The wife was able to prove that her husband had made several misrepresentations during discovery when he answered depositions and interrogatories as if he had never been married before. Id. at 207-208. Thus, she established grounds for relief from the divorce decree under Rule 60(b)(3) as well as Rule 60(b)(2). Id.

through which to challenge an arbitration award.[12]  Therefore, Count III will be dismissed for failure to state a claim upon which relief can be granted.

### F. Count IV

ACE argues that Count IV, ACE's common law fraud and misrepresentation claim, survives Defendants' motion to dismiss because the present action was filed within the applicable statute of limitations.[13]  (See Pl.'s Br., doc. no. 10 at 15.)  The Riccardos do not respond to this argument or explain why the timely Count IV should also be dismissed.  Thus, the Court will deny Defendants' motion to dismiss as to Count IV.

## V. Conclusion

The Riccardos' motion to dismiss is granted in part and denied in part.  The motion is granted as to Counts I, II, and III and denied as to Count IV of the Amended Complaint.  A status and scheduling conference shall be convened to determine how to proceed.  An appropriate Order follows.

---

[12]  Congress has specifically provided an avenue for this relief, the FAA.  See 9 U.S.C. § 9.  As a general proposition, a specific legislative enactment, i.e. the FAA, would trump a general rule, i.e. Rule 60(b).  Additionally, the time period to bring an action under Rule 60(b)(3) (one year) would conflict with the statute of limitations under the FAA (three months).  See 9 U.S.C. § 12.

[13]  Pennsylvania has a two-year statute of limitations in which to file a claim for fraud or misrepresentation.  See 42 Pa.C.S. § 5524(7).  Under New Jersey law, the statute of limitations for fraud is six years.  See N.J.S.A. § 2A:14-1.